UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| GLORIA A. WORKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-061-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Gloria A. Workman seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

**I.    Facts**

Workman applied for DIB alleging she was no longer able to work because of limitations and symptoms related to fibromyalgia, arthritis, diabetes mellitus, and other health conditions. (Tr. 26, 78, 415.) According to the administrative record and Workman's testimony, Workman was employed as a beautician for thirty-five years before she stopped

working in 2000. (Tr. 35, 383, 414.) She applied for DIB on September 11, 2000, and an Administrative Law Judge (ALJ) held a hearing and issued a decision on May 28, 2002, in which he found that she was not disabled. (Tr. 168-73, 388-409.) Workman sought review from the Appeals Council, and the Appeals Council granted the request and remanded the case for further proceedings. (Tr. 176-77.) In its remand decision the Appeals Council determined in part that the ALJ had not adequately evaluated opinions rendered by Workman's treating physician, W.O. Kearse, M.D., noting that Dr. Kearse had provided Workman with medical care for several years and had indicated that Workman was significantly impaired in her activities and ability to work and experienced difficulty raising her arms and using her hands. (Tr. 176.)

On remand another ALJ held a hearing and issued a decision finding that Workman was not disabled on grounds that she was capable of performing the full range of sedentary work despite her severe impairments. (Tr. 13-21, 410-29.) Workman appealed the ALJ's decision, but the Appeals Council denied review. (Tr. 5-8.) In the instant appeal Workman contends (1) the ALJ failed to apply the proper legal standards in evaluating opinions from Dr. Kearse and failed to give proper weight to the physician's opinions; (2) failed to properly evaluate the combination of her impairments; and (3) issued a decision that is conclusory and unsupported by substantial evidence.

**II.     Discussion**

Workman's arguments have merit. The ALJ erred in evaluating opinions offered by Dr. Kearse, failed to consider the combination of Workman's impairments, and did not support his decision with substantial evidence.

    A.     *Physician Opinion*

Workman indicated in testimony at the first hearing in 2002 that she had known Dr. Kearse for twelve to fifteen years, and records in the administrative transcript show that Dr. Kearse provided Workman with medical care beginning as early as 1991. (Tr. 149, 402.) In a letter dated May 6, 2002, Dr. Kearse stated that Workman had complained over a ten-year period of increasingly severe musculoskeletal syndrome and that she suffered from a number of symptoms including aching pain, poor sleep patterns, fatigue and exhaustion after minimal or no activity, and limitations in her upper extremities that were exacerbated with elevation of her arms. (Tr. 375-76.) He further stated that on examination Workman was tender in muscle groups, was severely impaired in the use of her upper extremities, and was increasingly impaired in standing and ambulation because of the effects of her condition on her lower back, buttocks, and thighs. Dr. Kearse noted that Workman suffered from fibromyalgia and the condition had responded poorly to therapy and seemed to be "increasing in its severity and disabling nature." He indicated that he did not expect her condition to subside and believed it would cause continuing disability. (Tr. 375.) He further indicated that he could not "imagine a vocation to which she could be cross-trained that she could perform without standing or walking and without using her upper extremities."

He concluded by stating that Workman's condition was complicated by a number of conditions including diabetes and related neuropathy and carpal tunnel syndrome in her right hand. (Tr. 376.)

Although the ALJ noted Dr. Kearse's letter, he did not evaluate the majority of the physician's opinions. (Tr. 16.) He merely stated that, contrary to Dr. Kearse's opinion, vocational expert testimony established that there were several jobs involving sedentary work that Workman could perform. (Tr. 17-18.) Significantly, the ALJ did not address Dr. Kearse's opinion that Workman suffered from symptoms he attributed to fibromyalgia or his opinion that Workman was severely impaired in the use of her upper extremities. (Tr. 16-17.) This omission was error, 20 C.F.R. § 404.1527, and is significant because Dr. Kearse's opinions are supported by other evidence in the record. William A. Ratnoff, M.D., a rheumatologist, diagnosed Workman with fibromyalgia and other rheumatologic problems. (Tr. 254, 291.) In addition, a State agency physician reported that Workman was affected by conditions in her shoulders and right hand that limited her ability to reach and perform activities involving fine and gross manipulation. (Tr. 127.)

The ALJ did, however, evaluate the opinions of Dr. Kearse, which were set forth in the letter referenced by the Appeals Council. In the letter, which is dated January 24, 2001, Dr. Kearse stated that Workman's symptoms were "refractory to therapy" and had "significantly impaired her life and capability for work." (Tr. 116.) Dr. Kearse attached an examination note to the letter which includes findings from a physical examination and a number of diagnoses, including fibromyalgia, diabetes, carpal tunnel syndrome, and diabetic

neuropathy. (Tr. 117-18.) The ALJ acknowledged the treatment relationship between Dr. Kearse and Workman but declined to accord his opinions controlling weight. The ALJ cited the "good cause exceptions" to the treating physician rule noted in *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) and rejected Dr. Kearse's opinions on grounds that the physician had "failed to provide diagnostic evidence that would support his reasoning." (Tr. 17.)

The ALJ erred. The Fifth Circuit Court of Appeals has not specifically held that a treating physician's opinion may be rejected on grounds that the physician did not provide or attach to his opinion supporting diagnostic evidence. Rather, the court has held that the ALJ may disregard treating physicians' statements that are "not supported by medically acceptable clinical laboratory diagnostic techniques [] or otherwise unsupported by the evidence." *Greenspan*, 38 F.3d at 237. In addition, the good cause exceptions are applicable in cases in which there is opinion from other physicians that contradicts the treating physician's opinion. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) ("Good cause may permit an ALJ to discount the weight of a treating physician *relative to other experts* where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence") (emphasis added)).

In this case, there are no opinions from other physicians that would contradict Dr. Kearse's opinions. In fact, Dr. Ratnoff's opinions, as well as opinions from other physicians, support Dr. Kearse's diagnosis. (Tr. 254-56, 317.) In addition, there is clinical,

5

laboratory and diagnostic evidence that supports some of Dr. Kearse's opinions. (Tr. 254-55, 285- 88, 291.) Thus, as the Appeals Council found in regard to the first decision, the second decision does not include an adequate evaluation of Dr. Kearse's opinions.[1]

  B.  *Combination of Impairments*

    The ALJ must consider the combined impact of the claimant's impairments throughout the disability evaluation analysis. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 CF.R. § 404.1523). The ALJ in this case stated that Workman reported pain in a number of areas including her shoulders, knees, hips, neck, and back as well as other symptoms, but stated that "all diagnostic testing has been negative." (Tr. 17.) Contrary to the ALJ's finding, diagnostic testing shows that Workman suffers from physical limitations that might cause the pain she alleges. Results from MRI testing shows physical findings consistent with severe osteoarthritis in Workman's left knee and severe degenerative arthritis in her right knee; disc herniations and osteoarthritis in her lumbosacral spine; spinal stenosis in her cervical spine; degenerative changes in the thoracic spine; and degenerative changes, osteoarthritis, and a "suspicious tear" in a tendon in her right shoulder. (Tr. 254-55, 285-

---

[1] It should be noted that although the Commissioner has not issued a ruling that would govern the analysis of claims regarding fibromyalgia, courts have recognized that fibromyalgia may be disabling. *See Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004); *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004). Fibromyalgia is a chronic condition recognized by the American College of Rheumatology (ACR) and is diagnosed after eliminating other conditions and based on findings of widespread pain with tenderness in at least eleven of eighteen sites known as trigger points. *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) (citation omitted). Evidence from Dr. Ratnoff indicates the presence of trigger points in Workman. (Tr. 291.) Symptoms of fibromyalgia include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and poor sleep patterns that may exacerbate the cycle of pain and fatigue associated with the disease. *Benecke*, 379 F.3d at 590. The evidence shows that Workman suffered from these symptoms. (*See, e.g.*, Tr. 117, 254, 289, 317.)

88.)

In addition, the evidence establishes Workman suffers from symptoms in her hands, arms, and shoulders that would limit her ability to perform tasks that require overhead reaching and tasks involving gross and fine manipulation with her right hand. (Tr. 117, 127, 254.) However, the ALJ did not specifically consider or incorporate the limitations into his residual functional capacity finding or in the hypothetical question he posed to the vocational expert. (Tr. 20, 425.) Because the ALJ relied upon the testimony of the vocational expert, his failure to incorporate the limitations into his hypothetical questioning is reversible error. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

  C. <u>*Substantial evidence*</u>

In Social Security appeals the court is charged with scrutinizing the record to determine whether the Commissioner's decision is supported by substantial evidence and determining whether the Commissioner applied the proper legal standards in reaching the decision. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citations omitted). In this case, in addition to the errors discussed above, there is not substantial evidence to support the Commissioner's decision. The ALJ ignored and/or rejected evidence from Dr. Kearse, ignored diagnostic evidence from Dr. Ratnoff, and ignored physical limitations indicated in opinions from State consulting physicians. (*See* Tr. 103-08, 127, 254-55, 285- 88, 375-76.) The only opinion from a State consulting physician was rendered on November 21, 2000, and the only residual functional capacity determination from a State consulting physician was rendered on December 12, 2000. (Tr. 103-08, 124-31.) Both the examination and the

residual functional capacity determination were completed over four and one-half years before the ALJ issued his decision on July 28, 2005. (Tr. 21, 103-08.) While the lack of current evidence from a consulting physician would not necessarily require a finding that the Commissioner's decision was not supported by substantial evidence, the record must contain substantial evidence to support the Commissioner's decision. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995). In this case, there is no opinion from any physician as to Workman's residual functional capacity after she underwent MRI studies and examination by Dr. Ratnoff, and the ALJ did not cite substantial evidence that would support his finding that Workman could perform the full range of sedentary work.

Substantial evidence is described as "that quantam of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)). Such evidence is missing from this case. This is not a case in which a physician determined that the claimant was capable of performing a particular level of work and the evidence showed the claimant participated in activities of daily living showing she was capable of performing that work. *Compare Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Nor is it a case in which there is evidence from a physician establishing the claimant was capable of performing the work cited by the ALJ. *Compare Rodriguez v. Bowen,* 857 F.2d 275, 278 (5th Cir. 1988). Rather, this is a case like *Ripley*, in which there is medical evidence establishing that the claimant has impairments imposing significant limitations but no evidence that would establish the effect the impairments have upon her ability to work. 67 F.3d at 557. Therefore, as in *Ripley*, remand is required for further administrative proceedings. *Id*.

**III.     Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Workman's case for further proceedings consistent with this recommendation.

**IV.     Right to Object**

Pursuant to 29 U.S.C.§ 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1414, 1428-29 (5th Cir. 1996) (en banc).

Dated:    January 30, 2007.

_____
NANCY M. KOENIG
United States Magistrate Judge

9